John Shaughnessey v. The Lininger & Metcalf Co.

[Filed June 11, 1892.]

1. **Agency:** Contract, set out in the opinion, *held*, **to** be one of agency and not conditional sale, and that it was unnecessary to file the same for record to protect the principal.

2. ———. That the agent had no interest in the property subject to levy and sale under an execution or attachment against him.

3. ———. The proof fails to establish a different contract from that showing agency.

Error to the district court for Johnson county. Tried below before Broady, J.

*Chamberlain Bros. & Rood*, for plaintiff in error.

*S. P. Davidson, contra.*

Maxwell, Ch. J.

This is an action of replevin brought by the plaintiff in error to recover the possession of certain articles of merchandise levied upon by him as sheriff, under an order of attachment issued in favor of the Iola Carriage & Omnibus Company against George E. Webb. On the trial of the cause the jury returned a verdict in favor of the defendant in error, upon which judgment was rendered. The property in question was furnished to Webb by the defendant in error under a contract of which the following is a copy:

"This agreement, made and entered into this 3d day of October, A. D. 1889, by and between Lininger & Metcalf Company, of Omaha, Nebraska, party of the first part, and G. E. Webb, of Tecumseh, county of Johnson, state of Nebraska, party of the second part, witnesseth: The party of the first part, for and in consideration of the covenants

and agreements to be performed by the party of the second part, hereinafter contained, has this day appointed the party of the second part agent for the sale of the goods hereinafter named in the following territory : Tecumseh and vicinity, in the state of Nebraska, and no other, it being agreed that the party of the first part will not be responsible for any trespass committed upon said territory, unless said trespass be committed by their direction, for and during the season ending January 1, 1891; and party of the second part, for and in consideration of the appointment to such agency, which is hereby accepted, and for the further consideration of the commissions herein named, agrees as follows, viz.:

" First—The party of the second part agrees to canvass for purchasers early and thoroughly in the territory herein named, and make said goods widely known by posters, circulars, and furnished advertising, and press the sale of said goods, and maintain their reputation to the fullest extent of his or their ability, and to sell said goods on as short time as possible, in no case to exceed nine months, and subject only to the manufacturer's regular printed warranty, and to deliver no goods to any customer before it is fully paid for by cash or note as herein required.

" Second—The party of the second part hereby guarantees the sale of all goods ordered for the season of 1889 and 1890, the meaning and understanding of this guarantee being, that in case the said goods are not all sold during the continuance of this contract, then the party of the second part shall keep all unsold goods insured for full value, in the name and for the benefit of said party of the first part, and will properly store and carry them over free of insurance, taxes, storage, and freight, subject to the order of said party of the first part, and if not ordered away, *to settle for all unsold goods, January 1, 1891, in cash, if required by the party of the first part.*

" Third—The party of the second part agrees to take all

notes for all goods sold on time on the blanks furnished by said party of the first part, and payable to their order at some bank or express office, with interest at the rate of ten per cent per annum from date until paid, and remit to said party of the first part all notes taken on sales, and their part of all cash received on sales as fast as received.

"Fourth—The party of the second part agrees that the makers of all notes which may be sent to the party of the first part in pursuance of this agreement shall, at the time such notes are sent, be parties of well known responsibility and good reputation for the payment of their debts in the locality where they reside, and the notes so sent shall contain true statement of the real and personal property of their makers, showing the name of at least one man who owns a farm of not less than eighty acres improved, worth at least $1,000 over and above any incumbrance, mortgage or otherwise, and $500 worth of personal property over and above all indebtedness, and shall also be secured by the goods sold.

"Fifth—The party of the second part agrees to attend to the collection or securing of notes taken by him without extra charge when requested, and agrees to guarantee the payment, and does hereby guarantee the payment of any and all notes taken by him or them as agent aforesaid in the following form, viz., 'For value received the undersigned guarantee the payment of the within note, and hereby waive notice of protest, demand, and the non-payment thereof.' And the party of the second part agrees that all notes or obligations guaranteed by him or them, if not paid in two months after maturity, he or they will take up the same and pay the cash to the said party of the first part, and to reimburse the party of the first part for all charges they may have to pay in collecting notes taken by the party of the second part.

"Sixth—The party of the second part agrees to receive all extras and printed matter shipped to him or them on

arrival at place of destination, and pay the freight and charges thereon, and will collect all breakages in shipping from the transportation company; to store all goods and parts out of the sun, wind, and rain, and to be liable to the said party of the first part for any damages that goods may sustain by reason of not being properly stored, to keep the party of the first part harmless from all charges for storage, reshipping, or taxes, and to hold all unsold goods and parts of goods for such time after the expiration of this contract (not to exceed one month) as may be requested by the party of the first part, subject to their order on the payment of any freight which may have been advanced on the same.

"Seventh—The party of the second part agrees to engage in the sale of no other goods of the same class, directly or indirectly, during the term of this agency, and further agrees not to sell said goods in any other territory than herein named, on penalty of forfeiting to the party whose rights are affected all the profits of such sales.

"Eighth—The party of the second part agrees to be accountable to and reimburse the party of the first part and assigns for any losses or expenses resulting from any deviation from this agreement or from the price list and conditions and instructions hereunto attached, which are hereby made a part of this agreement.

"Ninth—And the said Lininger & Metcalf Company agrees to furnish the goods herein named to the said party of the second part on board cars at Omaha as fast as the same are ordered, to the extent of their ability so to do, to be accounted for to the said Lininger & Metcalf Company in cash or notes, as herein stated, at the prices named from time to time by Lininger & Metcalf Company. It is further agreed that prices on subsequent shipments are subject to changes in the market price of the material with the understanding that the Lininger & Metcalf Company will meet honorable competition on first-class work, that any

goods shipped by the party of the first part to the party of the second part shall be settled for under the provisions of this agreement at invoice prices, whether named in this agreement or not.

"Tenth—The party of the first part agrees to furnish the party of the second part with circulars and notes, and to furnish goods to fill orders if taken in conformity with his agreement so long as they have any on hand not engaged. The party of the first part hereby agrees to allow and the party of the second part hereby agrees to receive and accept as his full commission on sales made as aforesaid the amount realized on sales of goods (above the net prices herein mentioned) as a consideration for transacting the business and fulfilling the conditions herein required, specified, and implied, but only on goods delivered and settled for and not on orders not filled.

" Eleventh—The party of the first part agrees that where goods are sold for cash the commissions shall be paid in cash, and when sold on time the commissions shall be paid in notes taken on sales in such notes as the party of the first part may select for that purpose, but maturing as nearly as possible with the average of notes taken for goods sold.

" Twelfth—It is agreed between the parties that the party of the first part reserve to themselves the right to rescind this contract at any time if the party of the second part shall fail to discharge any of the obligations entered into as above or whenever the party of the second part is not able to fulfill the same. If from any cause whatever the said Lininger & Metcalf Company are unable to furnish the goods herein named to the party of the second part they are not liable for any damages whatsoever.

".This agreement entered into the day and date above written in. In witness whereof, we have hereunto set our hands.

"(Signed)              LININGER & METCALF Co.,
                          "By M. HILL.
                    "G. E. WEBB."

The above is a contract of agency and not of conditional sale, and it was unnecessary to file the same for record to protect the principal. Webb had no interest in the property subject to execution or attachment. It is unnecessary, therefore, to review the evidence or instructions at length. An attempt was made on the part of the plaintiff to show an independent contract outside of the above, but the evidence fails to establish the same. The verdict is the only one that could be sustained. The judgment is therefore

AFFIRMED.

THE other judges concur.